EXCHANGE BANK OF ST. LOUIS *vs.* GEORGE W. RICE & another.

A promise to accept a bill of exchange, contained in a letter from the drawee to the drawer, written after the bill has been negotiated, will not enable the holder to sue the drawee as acceptor, even if the bill is expressed to be drawn " against twelve bales of cotton," and has been discounted on the credit thereof.

GRAY, J. The plaintiffs in this action seek to recover the amount of a bill of exchange for $3300. The material facts appearing by the report of the judge before whom (a trial by jury having been waived) the case was tried in the superior court are as follows :

The bill was drawn by John P. Hill at St. Louis on the 8th of March 1865 upon the defendants at Boston, " against twelve bales of cotton," (as was stated in a memorandum at the foot of the bill,) and payable in thirty days from date to the order of Pitman & Co., and on the day of its date was discounted by the plaintiffs and indorsed to them by the payees. On the same day Hill wrote to the defendants informing them of the drawing of the bill and the forwarding of the cotton. On the 14th of March the defendants wrote in reply, saying, " Your shipment of twelve bales of cotton will receive due attention. Bill of lading not at hand. Your draft for $3300 is excessive, particularly as we shall have no margin on previous shipments as the market now looks. We will honor the same, but shall expect you, on receipt of this, to make us shipment of cotton to cover the margin." On the 15th of March the bill was presented by the plaintiffs to the defendants and noted for non-acceptance, and the defendants wrote to Hill that this had been done because they had received no bill of lading, and added, " When bill of lading is received, will accept draft." The bill of lading was in terms for the delivery of the twelve bales to the defendants or order, and was sent on the 12th and received by them on the 17th of March. The defendants, on the same day, wrote to Hill and to Pitman & Co. that they should not honor the bill unless additional cotton should be sent them to meet unaccepted

bills, and informed Pitman & Co. that they had telegraphed to Hill; and on the same day Pitman & Co. wrote to the defendants that they were advised of the protest for non-acceptance of this bill. On the 22d of March the defendants' letter of March 15 was shown by Pitman & Co. to the plaintiffs, who procured of them the letter and the duplicate bill of lading, and on the 27th of March again presented the bill, with these documents, to the defendants, and protested it for non-acceptance, and on the 10th of April for non-payment. The defendants subsequently received the cotton, sold it, and credited Hill with the amount in general account.

The judge found, as matter of fact, that the plaintiffs, in discounting the bill, relied on the memorandum thereon, as well as on the names of the parties thereto; and held, as matter of law, that the defendants by their letter of March 15, whether taken by itself or in connection with the whole correspondence, absolutely promised to accept the bill, when the bill of lading should be received; and that upon the receipt of the bill of lading the defendants became liable as acceptors of the bill; and gave judgment for the plaintiffs for the amount thereof, with interest. The defendants alleged exceptions.

It has long been well settled, though it has often been regretted that it should not originally have been held otherwise, that, in the absence of any statute prescribing a different rule, the acceptance of a bill of exchange need not be by writing upon the bill itself, but that a separate written or even oral promise by the drawee to the holder binds the drawee as an acceptance which he is estopped to deny. *Wilkinson* v. *Lutwidge*, 1 Stra. 648. *Lumley* v. *Palmer*, Cas. temp. Hardw. 74; *S. C.* 2 Stra. 1000. *Ward* v. *Allen*, 2 Met. 53. *Wells* v. *Brigham*, 6 Cush. 6. It is equally well settled that an acceptance, otherwise sufficient, is not the less so by reason of a previous refusal to accept and protest for non-acceptance. *Grant* v. *Shaw*, 16 Mass. 344. And an acceptance may be conditional, and become absolute when the condition is performed. *Coolidge* v. *Payson*, 2 Wheat. 72. *United States* v. *Bank of the Metropolis*, 15 Pet. 394, 395. *Grant* v. *Shaw*, 16 Mass. 344.

Under what circumstances a promise to accept, contained in a letter to the drawer, will enure as an acceptance to the benefi of the holder, is a question upon which there has been a divergence between the English and American courts since the time of Lord Mansfield.

Where drawees were sought to be charged as acceptors of a bill of exchange by reason of a letter from them to the plaintiffs, to whom the bill had been previously indorsed, Lord Mansfield said, " It has been truly said as a general rule that the mere answer of a merchant to the drawer of a bill, saying he will duly honor it, is no acceptance, unless accompanied with circumstances which may induce a third person to take the bill by indorsement." *Pierson* v. *Dunlop*, Cowp. 573, 574. And in an action against the drawees as acceptors on a· promise to accept in a letter written to the drawer before the drawing of the bill sued on, he said, " There is no doubt but an agreement to accept may amount to an acceptance, and it may be couched in such words as to put a third person in a better condition than the drawer. If a man, to give credit to another, makes an absolute promise to accept his bill, the drawer or any other person may show such promise upon the exchange, to get credit, and a third person, who should advance his money upon it, would have nothing to do with the equitable circumstances which might arise between the drawer and acceptor." *Mason* v. *Hunt*, 1 Doug. 299. See also *Pillans* v. *Van Mierop*, 3 Burr. 1667, 1669, 1672, 1673.

These cases were formerly supposed to have settled the rule in England to be that a promise to accept even a bill not yet drawn would sustain an action by one who afterwards took the bill on the credit of the promise. Beawes Lex Merc. Bills of Exchange, pl. 112. Kyd on Bills (1st Am. ed.) 72, 74. Byles on Bills (6th ed.) 145. But from the time of Lord Kenyon the tendency of the English decisions has been to hold any promise to accept a non-existing bill of exchange insufficient to support an action by an indorsee of the bill. *Johnson* v. *Collings*, 1 East, 98. *Ex parte Bolton*, 2 Deacon, 537 ; *S. C.* 3 Mont. & Ayrt. 367 Opinions of English counsel in 2 Story, 219, 220. *Bank of Ireland* v. *Archer*, 11 M. & W. 383.

On the other hand, in the case of a promise to accept a bill already drawn, the later decisions in England have established the rule there to be that such a promise, oral or written, either to the drawer or the payee, is an acceptance upon which an indorsee who has taken the bill before the making of such promise, and of course therefore not upon the faith of it, may maintain an action; even if the drawer does not receive the letter containing the promise until after the bill becomes due, or is dead before it is written. *Wynne* v. *Raikes,* 5 East, 514. *Rees* v. *Warwick,* 2 B. & Ald. 115. *Fairlee* v. *Herring,* 3 Bing. 625; *S. C.* 11 Moore, 520. *Billing* v. *Devaux,* 3 M. & G. 565; *S. C.* 4 Scott N. R. 175. *Grant* v. *Hunt,* 1 C. B. 44. These cases are all founded upon that of *Powell* v. *Monnier,* 1 Atk. 611, in which Lord Hardwicke is reported to have held that a letter written by the drawee to the drawer, saying that the bill should be duly honored and placed to his debit, showed an acceptance upon which a previous indorsee might maintain an action. It is to be observed that it does not appear, either by the report in Atkins, or by that since published with additions from Lord Hardwicke's own note book in West Ch. 68, that any objection on the ground that the promise was not made or communicated to the plaintiffs was raised or considered; and that the earlier cases to which Lord Hardwicke referred as conclusive authorities were of oral or written promises made directly to the holder. If the decision went as far as has been understood in the later English cases, it is somewhat remarkable that it was not cited in any of the cases before Lord Mansfield, and that he laid down a narrower rule.

In *Coolidge* v. *Payson,* 2 Wheat. 66, Chief Justice Marshall, who delivered the unanimous opinion of the supreme court of the United States, affirming the judgment of Mr. Justice Story in 2 Gallison, 238, after carefully examining the opinions of Lord Mansfield, and alluding to a distinction suggested between bills drawn before and after the date of the promise, said, " The court can perceive no substantial reason for this distinction. The prevailing inducement for considering a promise to accept as an acceptance is, that credit is thereby given to the bill. Now this

credit is given as entirely by a letter written before the date of the bill as by one written afterwards. It is of much importance to merchants that this question should be at rest. Upon a review of the cases which are reported, this court is of opinion that a letter written within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is, if shown to the person who afterwards takes the bill on the credit of the letter, a virtual acceptance binding the person who makes the promise." This rule has since been repeated in the same words by the supreme court, and by Justices Story, McLean and Nelson on the circuit. *Schimmelpennich* v. *Bayard*, 1 Pet. 284. *Boyce* v. *Edwards*, 4 Pet. 121. *Wildes* v. *Savage*, 1 Story, 27. *Russell* v. *Wiggin*, 2 Story, 234–237. *Bayard* v. *Lathy*, 2 McLean, 463. *Cassel* v. *Dows*, 1 Blatchf. C. C. 341. As applied to non-existing bills, it corresponds with the rule previously stated and since affirmed by this court, and by the supreme court of New York. *Wilson* v. *Clements*, 3 Mass. 10, 11. *Storer* v. *Logan*, 9 Mass. 58, 59. *M'Evers* v. *Mason*, 10 Johns. 207. *Goodrich* v. *Gordon*, 15 Johns. 6. *Parker* v. *Greele*, 2 Wend. 545; *S. C.* 5 Wend. 414. *Carnegie* v. *Morrison*, 2 Met. 406. *Murdock* v. *Mills*, 11 Met. 5. It is true that all these cases were of promises to accept nonexisting bills, and did not necessarily involve any question upon promises to accept bills already drawn. But the general rule laid down by the supreme court of the United States in terms includes letters written within a reasonable time " before or after " the bill; is adopted in the same form by Chancellor Kent in his Commentaries; has been applied with all its limitations, as a rule of the general law merchant, to promises of the drawee to the drawer to accept bills already drawn, by the supreme courts of New York and New Jersey, and, with some qualification, Pennsylvania; and has been affirmed in New York and Missouri, and perhaps in other states, by statute. 3 Kent Com. (1st ed.) 55; (6th ed.) 84. *Ontario Bank* v. *Worthington*, 12 Wend. 593. *Bank of Michigan* v. *Ely*, 17 Wend. 510, 511. *Oderman* v. *Hoboken City Bank*, 1 Vroom, 68. *Howland* v. *Carson*, 15 Penn. State, 453. *Steman* v. *Harrison*, 42

Penn. State, 49. Rev. Sts. of N. Y. (5th ed.) pt. 2, *c.* 4, tit. 2, §§ 6–10. Gen. Sts. of Missouri, *c.* 86, §§ 1–5. The only American case to which we have been referred, in which an action has been maintained by the holder of a bill upon a separate promise to accept, made not to him, after he took the bill, is that of *Read* v. *Marsh*, 5 B. Monr. 8.

The rule generally adopted by the American courts in such a case is analogous to that by which the signer of a letter of credit has been held liable to those drawing bills or advancing money upon the faith of it. Molloy, bk. 2, *c.* 10, § 36. *Pillans* v. *Van Mierop*, 3 Burr. 1663. *Boyce* v. *Edwards*, 4 Pet. 111. *Russell* v. *Wiggin*, 2 Story, 213. *Carnegie* v. *Morrison*, 2 Met. 381. *Barney* v. *Newcomb*, 9 Cush. 45. *In re Agra & Masterman's Bank*, Law Rep. 2 Ch. 397.

The difference of opinion between the American and the English courts upon a question of commercial law, affecting the right of action upon negotiable instruments which pass freely between the two countries, is much to be regretted. But in view of the peculiar importance of maintaining consistency and harmony in the decisions of the various courts, state and national, throughout the United States, it is clearly our duty to follow the rule deliberately announced by the supreme court of the United States more than half a century ago, and ever since recognized and affirmed by the American authorities, with hardly an exception. The American rule has the advantages of being uniform in its application to all promises to accept a particular bill, not made to the holder or written on the very bill, whether made before or after it is drawn ; and of restricting within the narrowest limits the anomalous doctrine of liability to an action upon negotiable paper, by reason of anything not appearing on the face of the paper itself.

In this case, the bill of exchange, when negotiated to the plaintiffs, was not accompanied by the bill of lading of the goods consigned to the defendants. The memorandum at the foot of the bill of exchange, that it was drawn against twelve bales of cotton, can have no more effect to charge the defendants as acceptors, than the mere signature of the drawer, which of itself

always implies a promise by him that he has funds in the hands of the drawee. The letter of March 15, having been written after the plaintiffs took the bill of exchange now sued on, and not addressed to them, did not make the defendants liable to them as acceptors of the bill. The ruling of the superior court was therefore erroneous, and, as it appears to have been based exclusively upon the assumption that the defendants were liable as acceptors, its finding must be set aside.

Upon the question whether the defendants, by reason of the subsequent receipt of the bill of lading and of the cotton therein mentioned, or of any other facts which were or might be proved, can be held liable in any other form, and, if so, for what amount, no ruling appears to have been made by the court below, and no opinion is expressed by this court.          *Exceptions sustained.*

*C. M. Ellis*, for the defendants.

*B. F. Thomas & R. Olney*, for the plaintiffs.